| | |
|---|---|
| JOHN DOE and JAMES DOE<br><br>Plaintiffs,<br><br>– Versus –<br><br>BOBBY JINDAL, Governor of Louisiana, in his official and individual capacities; JAMES D. CALDWELL, Attorney General of Louisiana, in his official and individual capacities; JAMES M. LeBLANC, Secretary, Louisiana Department of Public Safety and Corrections, in his official and individual capacities; HILLAR C. MOORE, III, District Attorney for East Baton Rouge Parish, in his official and individual capacities; JOHN PHILLIP HANEY, District Attorney for Iberia, St. Martin and St. Mary Parishes, in his official and individual capacities;<br><br>Defendants. | NUMBER: 3:11-CV-554<br><br>JUDGE: Hon. Brian A. Jackson<br><br>M. JUDGE: Hon. Stephen C. Riedlinger<br><br>CIVIL RIGHTS ACTION<br>42 U.S.C. § 1983<br><br>DECLARATORY AND INJUNCTIVE RELIEF<br><br>RE: UNCONSTITUTIONALITY OF STATE CRIMINAL STATUTE |

## PLAINTIFFS' POST-TRIAL MEMORANDUM

**I.  FACTS**

Plaintiffs rest on the facts as previously set forth.

**II.  ARGUMENT**

**A.  Overbreadth**

Defendants have narrowed the scope of this Court's overbreadth review with a chain of concessions: First, Defendants concede that if §14:91.5 bars the entire internet, it is unconstitutionally overbroad. Def. Trial Brief, Doc. 38, p.17 ("It should be said clearly: if this is

1

what the Act means, then Plaintiffs are correct. Criminalizing any internet activities by registered offenders would be substantially overbroad…").

Second, Defendants concede that the only question before the Court on overbreadth is whether the Act bars the entire internet. Def. Trial Br., Doc. 38, p.18 ("The only question for overbreadth analysis is whether the Act's definition of "social networking website" goes beyond Facebook-style interactive websites to encompass the entire internet.")

Third, the Defendants rely exclusively upon the Department of Public Safety and Corrections' limiting regulation in claiming that the Act does not bar the entire internet. Def. Trial Br., Doc. 38, p.18 ("There is now no question that the Act [does not encompass the entire internet]. The Secretary has just issued a regulation governing the interpretation and implementation of the Act, and clarifying that the Act has a significantly narrower compass than plaintiffs fear.")

Essentially, Defendants have admitted that §14:91.5 is facially overbroad, and that the DPSC's limiting regulation is the only thing that can save it. Therefore, according to Defendants, the only overbreadth questions this Court must answer are: (1) must the Court consider the limiting construction, and if so, (2) considering the limiting construction, is there still a conceivable set of circumstances under which §14:91.5 operates unconstitutionally? *See* <u>Center for Individual Freedom v. Carmouche</u>, 449 F.3d 655, 662 (5th Cir., 2006) ("On a facial challenge, the challenger need only show that a statute or regulation might operate unconstitutionally under some conceivable set of circumstances."). Plaintiffs address each question in turn.

### 1. The State's limiting regulation is entitled to little or no consideration.

There are four reasons why this Court may not need to consider the DPSC's limiting regulation at all. The first two reasons are conditional, in that two of the arguments advanced by

2

the Defendants, if accepted by this Court, should bar the Court from also considering the limiting construction. The other two reasons stand on their own.

### a. Defendants contradict themselves regarding Secretary LeBlanc's enforcement power

First, as discussed at oral argument, the Court only has to consider a limiting regulation that comes from a state court or an enforcement agency. <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Defendants' limiting regulation comes from Secretary LeBlanc; however, earlier in this case, Defendants argued that LeBlanc should be dismissed on sovereign immunity grounds because he "has no connection with enforcement of the statute" under <u>Ex Parte Young</u>. Doc. No. 34-1, p.6. The extent of Secretary LeBlanc's enforcement power has been briefed elsewhere, but for purpose of the limiting regulation, the state should not be heard to argue that LeBlanc has enforcement power for purpose of <u>Ward</u> but not <u>Ex Parte Young</u>. Either LeBlanc has sufficient enforcement power and is a proper defendant in this case[1] or judicial estoppel bars this Court from considering his limiting regulation.[2]

### b. Defendants contradict themselves regarding vagueness

Second, Defendants also argue that §14:91.5 is neither vague nor ambiguous. Def. Trial Br., Doc. 38, p. 21-26. They emphatically insist, for example, that "the terms 'chat room' and 'social networking website' are deeply ingrained in the public conscience – they are defined in dictionaries and instantly understood by anyone who uses the internet." Id. at 24. However, if

---

[1] Plaintiffs maintain that Secretary LeBlanc is a proper defendant in this case under <u>Ex Parte Young</u>. However, they do not suggest that the DPSC's limiting construction is valid simply because LeBlanc has enforcement power; indeed, Plaintiffs maintain that the limiting construction is defective for myriad other reasons briefed below. Plaintiffs merely point out here that if the Court dismisses LeBlanc for lack of enforcement authority, it should also disregard LeBlanc's regulation.

[2] Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding" and applies when (1) the party's current position is clearly inconsistent with its previous one, and (2) the previous position was accepted by the court. <u>Hopkins v. Cornerstone America</u>, 545 F.3d 338, 347 (5th Cir. 2008)

3

that's the case – that the Act's provisions are clear and easily understood – then the Act is not susceptible to a limiting construction.³ *See, generally*, Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (limiting construction only applicable if statute is "readily susceptible" to such a construction); City of Houston, Texas v. Hill, 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (an ordinance is "not susceptible to a limiting construction" where "its language is plain and its meaning unambiguous").

### c. The DPSC regulation applies only to DPSC agents

Third, assuming the DPSC is an enforcement agency for purposes of Ward, its enforcement authority – and thus its authority to limit application of the Act – extends solely to the state's parole and probation officers. As the Court pointed out, and Defendants conceded at oral argument, applicability of the DPSC regulation is expressly limited to DPSC agents and employees, Trial Tr. at 40; the Attorney General's office, the parish DAs, the sheriffs and the state courts are not bound by the regulation and remain free to interpret the Act how they see fit. Trial Tr. at 39-40, 47-49.

The two cases Defendants cite in support of their DPSC regulation argument, Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) and Baby Dolls v. City of Dallas, 295 F.3d 471 (5th Cir. 2002), actually undercut Defendants' position. In Ward, the city of New York offered a limiting regulation on a city ordinance; in Baby Dolls, the Dallas city attorney issued a letter advising the city not to enforce an anti-strip club regulation a certain way and the city police chief testified that he would obey. In both cases, the authority issuing the limiting regulation actually had the authority to limit the scope of enforcement activity – something the Court emphasized in Ward when it wrote, "the city has interpreted the guideline in

---

³ Again, Plaintiffs maintain that §14:91.5 *is* impermissibly vague. If, however, the Court determines that the Act's language is as clear and unambiguous as Defendants insist, it should also determine that the Act is not susceptible to a limiting construction.

4

such a manner as to provide additional guidance *to the officials charged with its enforcement*." Id. at 795 (emphasis added). Here, the state hasn't provided any guidance "to the officials charged with the Act's enforcement"; a discrete arm of the state has provided limited, ambiguous guidance to a small percentage of the officials charged with enforcement. There has been no limiting instruction from the Louisiana legislature, attorney general or any of the 42 district attorneys, particularly the district attorneys named herein, and the DPSC has no authority to bind any of those parties. Defendants cite no precedent for their much broader suggestion that this Court should accept a limiting regulation from a discrete agency of such narrow jurisdiction.

So what guarantee do Plaintiffs and this Court have that all of the state enforcement officials will obey the DPSC? None. Defendants acknowledged at oral argument that the DPSC regulation applies only to DPSC agents, Trial Tr., p. 39-41, but stated that they "hoped" the state courts would abide by the DPSC's interpretation of the Act. Id. at 39. While Defendants presumably *hope* the state's other non-DPSC enforcement agents also will follow along, the Supreme Court has stated that such naked sentiment is simply not good enough: "The First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." US v. Stevens, 130 S.Ct. 1577 (2010) (striking down as overbroad a statute criminalizing depictions of animal cruelty, despite the government's insistence that it would only prosecute depictions of "extreme" cruelty, and not of "anything less").

### d. The DPSC regulation does not apply to Plaintiffs

Fourth, even if the limiting regulation binds the state's parole and probation officers to a narrower application of the Act, that narrower application is of no consolation to John and James

Doe, as neither has a parole or probation officer. They are left at the mercy of those whose subjective judgment is not bound by the DPSC. Trial Tr. 39, 61-62.

### 2. The limiting regulation – assuming the Court can consider it – cannot save §14:91.5 from a finding of overbreadth

If the Court determines that Secretary LeBlanc has sufficient enforcement power, finds that the Act is vague and therefore susceptible to a limiting construction, disregards the DPSC's narrow jurisdiction and overlooks the fact that neither Plaintiff has a parole or probation officer, it should consider the limiting regulation. It should consider it ambiguous and overbroad.

The limiting regulation incorporates the statutory definitions of "social networking site," "chat room" and "peer-to-peer network," but adds a broad and ambiguous qualifier for banning: to be subject to restriction, a webpage's primary purpose must be to "facilitate online social interaction." DPSC Regulation at 2, ¶6(D); *see also* LeBlanc Aff. at 1. The parties and the Court discussed the overbreadth and ambiguity of that confusing qualifier at length during oral argument, Trial Tr. 66-71, and Plaintiffs will not rehash the argument here. They simply maintain that the phrase "facilitate online social interaction" is no less problematic than the overbroad and ambiguous language of the Act itself, and does nothing to limit application of the Act to web pages frequented by minors. Adults may "facilitate online social interactions" with other adults just as easily as with minors, and the Act/Regulation combo would bar *all of those interactions* instead of more narrowly focusing on interactions between sex offenders and children. It therefore is just as easy to imagine a set of circumstances under which the DPSC's regulation might lead to an unconstitutional result. Carmouche, *supra*.

One example discussed at oral argument was LeBlanc's suggestion that, in order to balance the Act's goal of protecting online communities frequented by children with the protections afforded by the Constitution, LinkedIn.com would be banned, but NYTimes.com

would not. Trial Tr. 68-71. However, LeBlanc's selective application of the Act misses the mark: LinkedIn.com is an adult professional networking and job-search site that doesn't allow minors, while NYTimes.com allows anyone down to the age of 13 to post publicly-visible user profiles and chat with other readers.[4] Both sites undoubtedly have social networking features as defined in the Act, and both undoubtedly "facilitate online social interaction." Applying the DPSC regulation to the Act, there is no reason why one should be banned but not the other, other than the subjective judgment of the DPSC. If LeBlanc cannot correctly apply his own regulation to two websites for purpose of trial, what sort of inconsistent results will occur when every court, sheriff, DA, parole officer, probation officer and police officer in the state of Louisiana is required to make the same qualitative, webpage-by-webpage evaluation?

**B.    The First Amendment**

Defendants argue that §14:91.5 does not bar the entire internet, but instead restricts access to only certain web pages, and that such a restriction is a constitutionally permissible "place" restriction on protected speech. That argument has two flaws:

**1.    Despite the limiting regulation, §14:91.5 still violates the First Amendment**

First, the Act's ban on individual web pages is perhaps even more constitutionally problematic than a ban on the entire internet, because the basis for distinguishing between permitted pages and banned pages is their content: sites that have social networking features such as bulletin boards and chat rooms are banned; sites that don't are permitted. Sites that incorporate mechanisms for communicating via text are barred; sites that don't are permitted. Sites that include publicly-visible user profiles are off-limits; sites that don't are okay.

---

[4]    http://www.nytimes.com/content/help/rights/terms/terms-of-service.html, Article 5.1

7

Case 3:11-cv-00554-BAJ -SCR   Document 48   11/23/11   Page 7 of 11

On the issue of content-based restrictions on what a person may read, the Supreme Court has made it clear: "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." Stanley v. Georgia, 394 U.S. 557, 565, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). And while the Defendants correctly noted at oral argument that the content at issue is not "football, the LSU/Alabama game this weekend, weather, whatever," Trial Tr. at 17-18, that observation sidesteps the critical point: the Act is a content-based restriction not because it limits what Plaintiffs may discuss on certain web pages, but because it limits the very web pages Plaintiffs may view and read based upon the content of those pages.

In Desert Outdoor Adver., Inc. v. City of Moreno Valley, 103 F.3d 814, 820 (9th Cir. 1996), cert. denied, 522 U.S. 912, 118 S.Ct. 294, 139 L.Ed.2d 227 (1997), the Ninth Circuit invalidated as a content-based restriction a municipal ordinance that imposed certain limitations on commercial signs, but allowed exemptions for the following items: (1) official notices; (2) notices posted by public officers; (3) directional, warning or informational structures; and (4) boundary or municipal identifying markers. Id. at 817. Significantly, the court noted that *the precise message of a particular exempted sign did not matter* – it did not matter, for example, what particular hazard an exempted warning sign advised readers to avoid – what mattered was that the ordinance required authorities to examine a sign's content to determine whether that sign fell within one of the exempt categories. The court wrote, "Because the exemptions require City officials to examine the content of noncommercial off-site structures and signs to determine whether the exemption applies, the City's regulation of noncommercial speech is content-based." Id. at 820.

8

Case 3:11-cv-00554-BAJ -SCR   Document 48   11/23/11   Page 8 of 11

§14:91.5, and just as importantly, the DPSC's limiting regulation, impose the same requirement: courts, prosecutors and other enforcement officials must look at the content of a web page to determine whether that page allows publicly-visible user profiles or mechanisms for text-based communication, or whether the purpose of the page is to facilitate online social interaction. The substance of the visible user profiles or the content of the text-based communications doesn't matter; all that matters is that enforcement officials must view the page and look at its content to determine whether visiting that page is a crime.

### 2. §14:91.5 is not a place restriction

Second, web pages are not so easily analogized to playgrounds and schoolyards when they are just as aptly regarded as media. Therefore, Defendants' argument that the Act is a mere "place" restriction – and their reliance upon United States v. Comstock, 130 S.Ct. 1949 (2010) and Hobbs v. Cnty. of Westchester, 397 F.3d 133, 152 (2nd Cir. 2005) (upholding restrictions on the physical places sex offenders may go) in support of that argument – are misguided. In Reno v. ACLU, *supra*, 521 U.S. at 868, the Supreme Court described the internet not as a collection of places one may visit, but as a "democratic" medium "comparable, from the readers' viewpoint, to both a vast library including millions of readily available and indexed publications and a sprawling mall offering goods and services". Limiting Plaintiffs' access to that library – not to some municipality that can be neatly zoned and fenced off – is what the State is really trying to do here, and the First Amendment forbids it.

### C. Due Process

Plaintiffs rely upon the arguments advanced in their pretrial brief and at oral argument on the subject of procedural due process, adding only a couple of points: First, due process "requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his

9

contemplated conduct is illegal." Carmouche, *supra*, 449 F.3d at 664. Here, because the Act criminalizes the mere *accessing* of a prohibited page, and because affected registrants cannot know that they have accessed a prohibited page until after they've viewed it and examined its features, they cannot possibly be said to have received adequate notice of their illegal conduct, or to have had adequate opportunity to seek an exemption from the court of original jurisdiction.

Second, Defendants cite Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 4 (2003) (noting that a sex offender could not bring a procedural due process challenge to his registration requirement where his procedural due process rights had been adequately protected at his criminal trial) in arguing that Plaintiffs are not entitled to bring a procedural due process challenge to §14:91.5. That reliance is entirely misplaced. First, Connecticut had nothing to do with the First Amendment and the imminent criminalization of an offender's right to engage in protected speech; it dealt only with an offender's obligation to publicly register with the state. Second, the Court in Connecticut held that the offender did not have a procedural due process right to a pre-registration hearing, whereas Defendants here already have argued at great length that §14:91.5 is constitutional partly *because* it provides affected registrants some measure – albeit a grossly inadequate one – of procedural due process.

### D. Plaintiffs' claims are not speculative

At oral argument, Defendants characterized Plaintiffs' entire body of claims as speculative because John Doe had not actually lost his job and James Doe had not actually been injured at work. Trial Tr. 44-45. The State's argument on that narrow point is simply disingenuous, as Plaintiffs' statements about potential job loss and physical injury concerned Plaintiffs' damage claims, which Plaintiffs dropped *after* their pretrial brief was filed. *See* Plaintiffs' Memo in Opposition to Defendants' Motion to Dismiss, Doc. 42, p. 7. Plaintiffs' right

10

to bring a pre-enforcement challenge to an unconstitutionally overbroad statute that criminalizes speech is governed by a completely different standard. Plaintiffs do not need to demonstrate actual economic or physical injury, and they need not wait until after they've been denied permission under the Act; they merely need to show that their otherwise protected First Amendment activities – or even activities of others – have been chilled by a credible threat of criminal prosecution. Carmouche, *supra*, 449 F.3d at 660, *citing* Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 302, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). They have met that burden here.

## III. CONCLUSION

For the reasons set out above, this Court should issue a declaratory judgment holding La R.S. §14:91.5 unconstitutional.

Respectfully Submitted,

/s/ Justin Harrison
Justin Harrison (LA 33575)
P.O. Box 56157
New Orleans, Louisiana 70156
(504) 522-0628
*Staff Attorney for the American Civil Liberties Union Foundation of Louisiana*

Ron Wilson (#13575), T.A.
701 Poydras St., Ste 4100
New Orleans, LA 70139
(504) 525-4361
*Cooperating Attorney for the American Civil Liberties Foundation of Louisiana*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2011, I served this brief on all Defendants via ECF.

/s/ Justin Harrison
Justin P. Harrison

11