UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE and JAMES DOE, | : |
| Plaintiffs, | : |
| v. | : |
| JAMES D. CALDWELL, JR., Attorney General of Louisiana; JAMES M. LEBLANC, Secretary, Louisiana Department of Public Safety and Corrections; HILLAR C. MOORE, III, District Attorney for East Baton Rouge Parish; and JOHN PHILLIP HANEY, District Attorney for Iberia, St. Martin and St. Mary Parishes, in their official capacities, | : Case No. 3:11-CV-554-BAJ-SCR |
| Defendants. | : |

DEFENDANTS' POST-TRIAL BRIEF

This matter came before the Court for a bench trial on November 2, 2011. Pursuant to the Court's instructions at the conclusion of those proceedings, Defendants James D. Caldwell, Jr., James M. LeBlanc, Hillar C. Moore, III, and John Phillip Haney hereby submit this post-trial brief on the merits.

I. OVERVIEW

Plaintiffs claim that Louisiana Revised Statutes section 14:91.5 (the "Act"), which prohibits the use of social networking websites by certain registered sex offenders, is facially unconstitutional on a variety of grounds, including vagueness and overbreadth. Defendants' briefing and oral arguments have examined the numerous reasons why these claims should be rejected, among them that plaintiffs' facial challenges to the Act are

speculative and premature, and that their concerns about potentially overbroad or standardless applications of the Act should be laid to rest by the limiting construction and implementing procedures recently issued by Secretary LeBlanc. Defendants stand by those arguments and will not rehash them here. Instead, given the Court's request for succinct post-trial briefs, along with plaintiffs' contention to the Court that the "two real issues" in the case are overbreadth and the independent First Amendment argument, *see* Transcript of Nov. 2, 2011 trial ("Tr.") at 10, this brief will focus on issues raised at trial related to those two claims.

II. ARGUMENT

  A. **Plaintiffs' overbreadth claim is fatally undermined by the existence of a limiting construction.**

  1. *Overbreadth standard*

The Court sought clarification during the November 2 proceedings regarding the propriety of pre-enforcement facial challenges in the First Amendment context. *See, e.g.*, Tr. at 23 ("Let's talk for a moment about what factor the Supreme Court has required that district courts look to to determine whether a statute on it's [sic] face and without anyone alleged to have yet violated the law but when the court is asked to rule on the constitutionality."); *see also* Tr. 25, 27. This question is central to the resolution of this case and thus warrants closer examination.

As a general matter, facial challenges are strongly disfavored because they "often rest on speculation," and therefore "raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 450 (2008) (internal quotation marks and citation omitted). They also

tempt courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.*

But the Court has made an exception to this general rule for facial challenges based on claims that an overbroad law—especially one imposing criminal sanctions—may deter or "chill" constitutionally protected speech. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). This special treatment is driven by "the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

An "overbreadth claimant bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (internal quotation marks omitted). *Broadrick*, the Court's seminal overbreadth opinion, instructs that a law will be struck down only where its overbreadth is "substantial . . . judged in relation to the statute's plainly legitimate sweep." *Id.* at 615; *see also Hill v. City of Houston, Tex.*, 789 F.2d 1103, 1125-27 (5th Cir. 1986) (discussing substantiality requirement). Nevertheless, the Court expressed a deep reluctance to "invalidat[e] a statute on its face and so prohibit[] a State from enforcing [it] against conduct that is admittedly within its power to proscribe," *Broadrick*, 413 U.S. at 614, and famously warned that the overbreadth doctrine is "strong medicine" and should be "employed . . . only as a last resort." *Id.* at 613. Finally—and critically for the current case—*Broadrick* also holds that overbreadth will not apply "when a limiting construction has been or

3

could be placed on the challenged statute." *Id.*; *see also United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989) (same).

    2. *The Regulation precludes a finding of overbreadth under* Broadrick

Plaintiffs concede that the State has a legitimate interest in prohibiting sex offenders from visiting these sorts of dedicated social-networking sites. *See* Tr. at 30 (noting that a ban on Myspace would be "narrowly appropriate"), and 37 (agreeing that the State has an interest in "keep[ing] sex offenders away from websites where minors congregate"). Thus, even taken on its face, the Act's "plainly legitimate sweep," *see Broadrick*, 413 U.S. at 615, is substantial. For example, Facebook, one of the social-networking sites contemplated by the Act, has more than 800 million active users, and is the second-most-visited website in the United States (behind Google). *See* http://www.facebook.com/press/info.php?statistics; http://www.alexa.com/siteinfo/facebook.com#. Twitter, another leading social-networking site, is the seventh-most-visited site in the country. *See* http://www.alexa.com/siteinfo/twitter.com# (sites last visited November 22, 2011). This factor alone strongly counsels against a finding of overbreadth. *See Wallington*, 889 F.2d at 576 ("[W]here there are a substantial number of situations to which a statute may validly be applied, we eschew reliance on the overbreadth doctrine.").

Yet, as plaintiffs themselves acknowledge, the key factor impacting the Court's overbreadth analysis is the existence of the limiting regulation implemented by the Department of Public Safety and Corrections (the "Department"). *See* Tr. at 11 ("And I think on both the issue of overbreadth and First Amendment, a lot of it is going to come down to the limiting construction that the state has offered in the . . . regulation

4

promulgated by LeBlanc and the Department of Public Safety and Corrections."). Department Regulation B-08-020 (the "Regulation"), which became effective October 12, 2011, establishes official department policy regarding the Act's interpretation and implementation. *See* Doc. No. 38, Exhibits. 1 (LeBlanc Affidavit) and 2 (Text of Regulation). The Regulation confirms that the Act is intended to prevent offenders from using interactive websites "that would enhance the ability of those offenders to target and contact potential victims." LeBlanc Aff. at 1; *see also* Regulation at 2, ¶6(D) (clarifying that a "social networking website" is one that "offers a mechanism for communication with other users, and whose primary purpose is to facilitate on-line social interaction"). It also clarifies that the Act's prohibitions do *not* "reach general news or informational websites merely because such sites allow readers to comment on, link to, or forward news articles or similar content." Regulation at 1-2, ¶¶6(A) (chat room), 6(B) (social networking website); *see also* LeBlanc Aff. at 1 (reiterating that the Act does not reach such internet activities). To underscore this point, it provides an illustrative list of prohibited websites, while also emphasizing that the Act does not apply to general news or informational websites simply by virtue of their user-comment or content-forwarding functions. *See* Regulation at 2, ¶7. Finally, the Regulation sets forth procedures under which offenders can seek exemptions from the Act. *See* Regulation at 3-4, ¶9; *see also id.* at 5 (form for requesting exemption from probation or parole officer). The Regulation is referenced in the information the Department sends to every person released from state custody who is required to register as a sex offender. *See id.* at 6-7 (providing notice of sex offender registration and notification requirements, including section 14:91.5 and Regulation B-08-020).

5

The Regulation's limitation of the Act's scope to legitimately proscribed speech precludes a finding of overbreadth under *Broadrick*. 413 U.S. at 613 (holding that facial invalidation is improper if there is a readily available "limiting construction" or "partial invalidation" that could remove the seeming threat or deterrence to constitutionally protected expression); *see also Sawyer v. Sandstrom*, 615 F.2d 311, 315 (5th Cir. 1980) ("In analyzing appellant's overbreadth claim, our first task is to determine if some sort of limiting construction has been placed on the challenged ordinance.").

The Court has, however, raised questions about the extent of the Regulation's reach—specifically, the fact that it is formally binding only as to those sex offenders who are still under the supervision of the Department. *See* Tr. at 39, 40. Any confusion regarding the scope of the Department's enforcement power likely stems from defendants' quotations of the Supreme Court's admonition in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), that, "[i]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency[1] has proffered." *Id.* at 795-96 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982)). Although this statement applies generally to facial challenges, its "court or enforcement agency" language is of limited relevance for a *Broadrick* overbreadth analysis. *See Broadrick*, 413 U.S. at 615 (noting that "facial overbreadth is an exception to our traditional rules of practice").

---

[1] The Court's line of questioning on this point presumably sought to establish whether the Department is an "enforcement agency" for purposes of *Wade*.

[2] Rejection of plaintiffs' facial overbreadth challenge would not deprive them of a remedy: any future overbreadth problems could be still be addressed through as-applied challenges of particular applications. *See Broadrick*, 413 U.S. at 615-16 (explaining that, where a law is not substantially overbroad, "whatever overbreadth may exist should be cured through case-by-case

6
Case 3:11-cv-00554-BAJ -SCR   Document 49   11/23/11   Page 6 of 12

*Broadrick* makes no mention of the enforcement power of the entity providing the limiting construction; instead, it provides simply that overbreadth "has not been invoked when a limiting construction has been *or could be* placed on the challenged statute." *Id.* at 613 (emphasis added).

Thus, the fact that the Department *has* placed a limiting construction on the Act, in the form of the Regulation, plainly satisfies the "could be placed" criterion in *Broadrick*. This point is borne out by numerous overbreadth decisions crediting limiting constructions with less binding effect than the Regulation. *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (relying on representations of counsel at oral argument that town took, and would enforce, a narrow view of picketing ordinance); *Baby Dolls Topless Saloons, Inc. v. City of Dallas, Tex.*, 295 F.3d 471, 483 (5th Cir. 2002) (crediting city attorney's limiting construction in opinion letter, along with police chief's testimony that he relied on the opinion letter); *Stretton v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 944 F.2d 137, 142 (3d Cir. 1991) (relying, in part, on non-binding limiting construction offered by counsel for disciplinary board). *Broadrick*'s "could be placed" language allows courts to consider possible limiting constructions even when *no* state court or agency has provided them. The Supreme Court has frequently confirmed this principle, noting that "[i]t has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988). In sum, the mere existence of the

Regulation demonstrates that the Act is "readily susceptible to a narrowing construction." *Id.* Plaintiffs' facial overbreadth challenge must therefore fail.[2]

### B. Plaintiffs' First Amendment challenge cannot satisfy the *Salerno* standard, and would be premature under any test

*1. The* Salerno *"no set of circumstances" test applies*

Plaintiffs argue that, apart from their overbreadth challenge, the Act is "simply an unconstitutional restriction of Plaintiffs' rights to free speech and association." [Doc. No. 37 at 13]. Yet to the extent that plaintiffs' First Amendment claim is framed as a facial challenge, it fails at the outset. The Supreme Court has explained that "[a]lthough facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context whether the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990). Plaintiffs' First Amendment claim falls under neither of these exceptions. It involves after-the-fact enforcement, not a permitting or licensing scheme or other prior review. And, as discussed *supra*, plaintiffs have asserted overbreadth as a distinct argument.

Accordingly, plaintiffs' facial challenge would be governed by the general rule, established in *United States v. Salerno*, that "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* at 745; *see also Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1331-32 (11th Cir. 2001) (discussing

---

[2] Rejection of plaintiffs' facial overbreadth challenge would not deprive them of a remedy: any future overbreadth problems could be still be addressed through as-applied challenges of particular applications. *See Broadrick*, 413 U.S. at 615-16 (explaining that, where a law is not substantially overbroad, "whatever overbreadth may exist should be cured through case-by-case analysis").

application of *Salerno* in First Amendment context). Plaintiffs' cannot hope to satisfy this rigorous standard, especially given their concession that the Act *can* be applied constitutionally towards certain websites. *See* Tr. at 30, 37. Their facial challenge must therefore fail.

   *2. Plaintiffs' facial challenge is premature and speculative*

Even assuming for the sake of argument that *Salerno* did *not* apply, plaintiffs' First Amendment claim would nonetheless be woefully premature. As detailed in defendants' pretrial brief, the Act is a reasonable time, place, or manner regulation that has not yet been "applied" to the plaintiffs in any way. [Doc. No. 38 at 8-14]. To be sure, defendants do not argue that the plaintiffs must wait until they are prosecuted before they can mount a legal challenge. But "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). Moreover, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id.* Yet plaintiffs' fears that the Act criminalizes their access to the entire Internet are just that—sheer speculation.

First, plaintiffs have never attempted to avail themselves of the exemption provision built into the Act and detailed by Regulation. They accordingly have no way of knowing whether the Act would pose any of the problems their First Amendment claim is based upon (e.g., prohibiting access to email and safety information). *See, e.g,* Doc. No. 37 at 23 (speculating as to plaintiffs' potential injuries).

Second, and more significantly, the limiting construction provided by the Regulation underscores the prematurity of plaintiffs' arguments. As discussed in Part II.A.2, *supra*, the Regulation makes clear that the Act is not targeted at the sort of general media websites plaintiffs fear it will reach. The Supreme Court has mandated that district courts must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Ward*, 491 U.S. at 795-96. Unlike in the overbreadth context, the Regulation's limiting construction is not dispositive as to the general First Amendment argument: *Ward*, after all, requires only that the Court "consider" it. *Id.* But the existence of the Regulation is nonetheless crucial in that it casts serious doubts on plaintiffs' predictions about the supposedly sweeping scope of the Act's enforcement.

In asking the Court to declare the Act unconstitutional before it is ever enforced, and before anyone has the chance to see whether the Regulation's interpretation of the Act will be accepted by courts and prosecutors[3], plaintiffs are asking the Court to engage in the sort of "premature interpretation of statutes" based on "factually barebones records" that the Supreme Court has repeatedly cautioned against. *See Wash. State Grange*, 552 U.S. at 450; *see also Bossier City Med. Suite, Inc. of Texas v. Greenstein*, 781 F. Supp. 2d 313, 319 (M.D. La. 2011) (Brady, J.) (rejecting pre-enforcement challenge to abortion regulations where the supposed threat of "draconian" enforcement by the state was "pure

---

[3] Indeed, to be entitled to any sort of recovery from defendants Moore and Haney (the "DA Defendants"), plaintiffs would be required to show that the district attorneys' own policies or customs were the direct cause of their constitutional injuries. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). They cannot do so. As discussed in defendants' motion to dismiss, the DA defendants, who have not enforced the law, cannot be held vicariously liable for the decisions of others. Doc. No. 34-1 at 8-9. The Court has not yet ruled on the motion to dismiss.

10
Case 3:11-cv-00554-BAJ -SCR   Document 49   11/23/11   Page 10 of 12

speculation"). The Court should decline to do so and reject plaintiffs' First Amendment claim as premature.

## III. CONCLUSION

For the foregoing reasons, along with the arguments advanced during trial and in defendants' prior briefing, the Court should reject plaintiffs' constitutional challenges to the Act.

    Respectfully submitted,

    JAMES D. "BUDDY" CALDWELL
    Louisiana Attorney General

BY:  /s/ Kurt Wall
      John W. Sinquefield, Bar Roll # 12107
      Kurt L. Wall, Bar Roll # 23349
      Bridget B. Denicola, Bar Roll # 27433
      Emalie A. Boyce, Bar Roll # 31060
      Assistant Attorneys General

      LOUISIANA DEPARTMENT OF JUSTICE
      P. O. Box 94005
      Baton Rouge, La 70804-9005
      Telephone: (225) 326-6716
      Fax: (225) 326-6793

      *On Behalf of Defendants Caldwell, LeBlanc, Moore, and Haney*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November, 2011, a copy of this pleading was filed electronically with the Clerk of Court through the CM/ECF system. Notice of this filing will be sent to all CM/ECF participants by operation of the court's electronic filing system and to non-CM/ECF participants by placing same in the United States mail, properly addressed, with first-class postage affixed thereto.

/s/ Kurt Wall
La. Bar No. 23349
*Counsel for Defendants*
